**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| TROY ALLEN TATE, | ) |
| | ) CIVIL ACTION NO. _____ |
| Plaintiff, | ) |
| v. | ) JUDGE _____ |
| | ) |
| KEASTON EVITT, in his individual | ) MAGISTRATE _____ |
| capacity; and SHERIFF JASON G. ARD, in | ) |
| his official capacity as a public entity, | ) JURY TRIAL |
| | ) |
| Defendants. | |

## COMPLAINT

NOW COMES Plaintiff, Troy Allen Tate, by and through undersigned counsel, who files this Complaint. In support, he states the following:

### I.    INTRODUCTION

1.    This case concerns an objectively unreasonable affidavit for arrest that was executed by defendant Keaston Evitt of the Livingston Parish Sheriff's Office. As a result of Mr. Evitt's objectively unreasonable affidavit, Mr. Tate was arrested and held in custody for thirteen (13) months. Ultimately, however, Mr. Tate was released after the criminal charges against him were voluntarily dismissed by the District Attorney, acting on behalf of the State of Louisiana.

2.    As is shown below, the affidavit that resulted in Mr. Tate's arrest was so devoid of facts as to Mr. Tate that no reasonable officer would have presented it to a judicial officer. In fact, the sole fact that was alleged—Mr. Tate's physical presence at a location where narcotics were found—has been ruled insufficient (standing alone) to constitute probable cause.

3.    Under established Supreme Court case law, an objectively insufficient arrest-warrant violates the Fourth Amendment as the initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection.

1

4.      Mr. Tate sues under 42 U.S.C § 1983 against Keaston Evitt, in his individual capacity, for violation of Mr. Tate's Fourth Amendment rights. Additionally, Mr. Tate brings state law claims of malicious prosecution against Mr. Evitt and Sheriff Jason Ard, in his official capacity as a public entity.

## II.     JURISDICTION AND VENUE

5.      Mr. Tate's claims against Mr. Evitt arise under federal civil rights law. This Court has jurisdiction over Mr. Tate's claims of federal rights claim under 42 U.S.C § 1983, which is enforceable in this Court pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

6.      This Court has supplemental jurisdiction over Mr. Tate's state law claims against Sheriff Jason Ard, in his official capacity as a public entity, as Mr. Tate's claims against Sheriff Jason Ard arise from the same operative facts as those brought against Mr. Evitt.

7.      The venue is proper in the Middle District of Louisiana under 28 U.S.C. § 1391(b)(2). A substantial part of the events giving rise to these claims occurred in Livingston Parish, which is situated in the Middle District of Louisiana.

## III.    THE PARTIES

8.      Mr. Tate is an individual residing in Livingston Parish, Louisiana. He is above the age of majority and is of sound mind.

9.      Mr. Evitt is an individual who, at all times relevant to this action, was a Sheriff's deputy working for Sheriff Jason Ard, which is the public entity that oversees the Livingston Parish Sheriff's Office. Mr. Evitt is sued in his individual capacity for damages (punitive, actual, and nominal) and attorneys' fees/costs.

10.     Sheriff Jason Ard is the public entity that oversees what is colloquially known as the Livingston Parish Sheriff's Office. Sheriff Jason Ard is sued in his capacity as the employer of

Mr. Evitt and other relevant employees. Sheriff Jason Ard is sued solely as to the state law claim of malicious prosecution.

## IV.     FACTS

11.     The events at issue occurred because of an arrest warrant that was executed by Defendant Keaston Evitt.

12.     On July 17, 2024, Mr. Evitt requested an arrest warrant directed towards Mr. Tate. The arrest warrant was issued by the magistrate the same day it was requested.

13.     Mr. Tate was charged with three offenses: (1) Possession with intent to distribute a Schedule I controlled substance; (2) Possession with intent to distribute a Schedule II controlled substance; and (3) possession of drug paraphernalia.

14.     In addition to stating the charges, the arrest warrant included a lengthy probable cause statement.

15.     A copy of the arrest warrant and probable cause statement are attached hereto as Exhibit "A."

16.     Upon information and belief, this same probable cause statement was also utilized to effectuate the arrest of three other persons: Kelvin "Bo-Bo" Johnson, Christopher Jones, and Jessica Thornton.

17.     The lengthy probable cause statement contains numerous and detailed statements concerning the activities of Mr. Johnson and Mr. Jones.

18.     Outlined at length in the probable cause statement was a Confidential Informant ("CI"). The CI singled out Mr. Johnson as possessing and trafficking narcotics.

19.     A confidential informant arranged for a third party to obtain narcotics from Mr. Johnson at the address of 31145 Blount Ln, Walker, Louisiana 70785.

20.     Mr. Johnson was observed to have narcotics and, when interviewed, admitted to

3

possessing narcotics.

21.    During the interview, Mr. Johnson stated that "a male who resides at the residence possessed on-half ounce of heroin, psilocybin mushrooms, and LSD."

22.    The officers obtained a search warrant for 31145 Blount Ln, Walker, Louisiana 70785.

23.    When they executed said warrant, Mr. Christopher Jones was interrogated, and he admitted to obtaining fentanyl, LSD, and psilocybin mushrooms from Mr. Johnson.

24.    Mr. Jones then led the officers to a shed and showed the officers where narcotics were hidden in a toolbox.

25.    Nowhere in this narrative is there any alleged wrongdoing by Mr. Tate whatsoever.

26.    In fact, the only allegations against Mr. Tate in the probable cause statement are as follows:

a.    "Upon arriving at the residence, Agents were able to gain access to the residence and detain Christopher Jones, Jessica Thoernton, and Troy Tate."

b.    "Affiant believes both Jones and Tate had access to the narcotics in the shed."

27.    That's it. Those are the only two allegations lodged against Mr. Tate.

28.    The affidavit does not state that Mr. Tate was a resident of the property.

29.    The affidavit does not state that Mr. Tate admitted to possessing narcotics or knowing of the narcotics.

30.    The affidavit does not state that the CI stated that Mr. Tate possessed or was involved with drug trafficking.

31.    The affidavit does not state that Mr. Tate was found to have drugs on his person.

32.    The affidavit does not state that Mr. Tate was observed or filmed entering the shed.

33.     The affidavit does not state that Mr. Tate was observed or filmed using the toolbox.

34.     The affidavit does not state that Mr. Tate was located in the shed.

35.     The affidavit does not state that Mr. Tate's fingerprints, DNA, or hair were found on the narcotics or the toolbox.

36.     The affidavit does not state that any co-defendants alleged that Mr. Tate owned or purchased narcotics.

37.     The affidavit does not state that any incriminating text messages or phone calls involving Mr. Tate were intercepted.

38.     The affidavit does not state that Mr. Tate's fingerprints or DNA were ever found on any drug paraphernalia.

39.     The affidavit does not state that Mr. Tate engaged in unprovoked flight from the officers or otherwise engaged in suspicious behavior.

40.     In sum: There is nothing in the affidavit from which a reasonable officer—or any reasonable person—could conclude that Mr. Tate was guilty of possessing controlled substances with intent to distribute or of possessing drug paraphernalia.

41.     Indeed, since 1979, it has been clearly established law that mere presence at a location where narcotics are found cannot establish individualized probable cause. *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979); see also, *United States v. Ashcroft*, 607 F.2d 1167, 1172 (5th Cir. 1979) ("association with known criminals or mere presence at the scene of a crime cannot suffice for probable cause where presence or association was the only factor indicating that the defendant was involved in criminal activity.").

42.     The only other "fact" listed in the affidavit—Mr. Evitt's subjective "belief" that Mr. Tate had access to the narcotics in the shed—is unadorned speculation. It is not a fact, and it

does not weigh towards a finding of probable cause. *United States v. Cooper*, 949 F.2d 737, 744 (5th Cir. 1991) ("Probable cause is determined by an objective test: it cannot be established simply by showing that the police subjectively believed that probable cause existed… .").

43.     Here, the affidavit was so lacking an indicia of probable cause that no reasonable officer would have sought a warrant for Mr. Tate's arrest.

Post Arrest Dismissal

44.     Mr. Tate remained detained in custody for more than thirteen (13) months.

45.     Upon information and belief, the criminal charges against Mr. Tate were not dismissed out of concern that, if Mr. Tate was dismissed, that Mr. Johnson's criminal defense attorney could attempt to "blame" Mr. Tate at a criminal trial of Mr. Johnson.

46.     Following Mr. Johnson's conviction, Mr. Tate was dismissed as a defendant.

47.     Mr. Tate did not plead guilty and was not convicted of the crimes charged.

Damages Suffered

48.     Mr. Tate was wrongly incarcerated for more than thirteen (13) months.

49.     The charge and incarceration took a significant emotional toll on Mr. Tate's mental health. Mr. Tated suffered—and continues to suffer—anxiety and emotional distress from the criminal charges and attendant wrongful incarceration.

50.     Mr. Tate's reputation was harmed; Mr. Tate was working as a contractor, but his ability to work has been impaired because of the reputational harm.

51.     Mr. Tate suffered depression from the wrongful incarceration.

52.     Mr. Tate suffered bodily injuries and infection while incarcerated. Upon information and belief, these injuries and infections would not have occurred but for Mr. Tate being incarcerated.

## V.    CLAIMS FOR RELIEF

### Claim I: Violation of the Mr. Tate's Fourth Amendment Rights
### Enforced Through 42 U.S.C § 1983
### (Solely as to Defendant Evitt)

53.     Mr. Tate realleges and incorporates the above paragraphs.

54.     The Fifth Circuit has held that "[t]he initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection—the Fourth Amendment if the accused is seized and arrested, for example." *Castellano v. Fragozo*, 352 F.3d 939, 945, 953 (5th Cir. 2003) (en banc).

55.     Here, as is discussed and detailed above, Mr. Evitt instituted criminal charges against Mr. Tate without probable cause.

56.     Based on the materially misleading affidavit, Mr. Tate was arrested for (1) Possession with intent to distribute a Schedule I controlled substance; (2) Possession with intent to distribute a Schedule II controlled substance; and (3) possession of drug paraphernalia.

57.     For the reasons set forth above, the affidavit was so lacking in indicia of probable cause that no reasonable officer would have sought a warrant for Mr. Tate's arrest.

58.     Accordingly, for the conducted detailed above, Mr. Evitt violated Mr. Tate's Fourth Amendment rights.

59.     Mr. Evitt was reckless in seeking an affidavit against Mr. Tate under the circumstances and based on an affidavit devoid of facts related to Mr. Tate.

60.     Mr. Tate's Fourth Amendment rights can be enforced through 42 U.S.C § 1983.

61.     Accordingly, Mr. Tate sues Mr. Evitt under 42 U.S.C § 1983 for violation of his Fourth Amendment rights.

62.     An award of punitive damages would be appropriate against Mr. Evitt. Mr. Evitt's

7

conduct evidenced a reckless disregard of the health, safety, or rights of Mr. Tate.

63.     As a relief for Mr. Evitt's violation of his rights, Mr. Tate seeks an award of damages (actual, nominal, and punitive) and attorneys' fees/costs.

**Claim II: State Law Claim for Malicious Prosecution**
**(As to Both Defendants)**

64.     Mr. Tate realleges and incorporates the above paragraphs

65.     Under Louisiana law a claim for malicious prosecution requires proof of six elements: 1) the commencement or continuance of an original criminal or civil judicial proceeding; 2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; 3) its bona fide termination in favor of the present plaintiff; 4) the absence of probable cause for such proceeding; 5) the presence of malice therein; and 6) damages conforming to legal standards resulting to plaintiff. *Hibernia Nat'l Bank of New Orleans v. Bolleter*, 390 So.2d 842 (La.1980).

66.     As a result of the facts set above, each of the element of a Louisiana claim for malicious prosecution has been satisfied.

67.     A plaintiff ordinarily bears the burden of proof on all the elements of the malicious prosecution action, including proving the absence of probable cause and malice. However, there is a presumption of lack of probable cause which is set forth in *Robinson v. Rhodes*, 300 So.2d 249, 251 (La.App. 2d Cir.1974), *writ refused*, 303 So.2d 178 (La.1974). Robinson firmly establishes

> "the rule that where a committing magistrate, without a trial, has discharged the accused, or the prosecuting officer has dismissed the charge, or where a grand jury has returned a no bill, there is a presumption of want of probable cause with the result that, in a suit for malicious prosecution based on that discharge, the burden of showing that he acted on probable cause and without malice is upon the defendant."

68.     Here, there was a bona fide termination in favor of the present plaintiff. Thus, there

8

is a presumption of want of probable cause and Defendants bear the burden of showing that they acted on probable cause and without malice.

69. Defendant Evitt is responsible for any/all wrongful conduct committed by its employees pursuant to the doctrine of *respondeat superior*.

70. As relief for Defendants' violation of his right to be free from malicious prosecution, Mr. Tate seeks an award of compensatory/actual damages and costs.

## VI.    DEMAND FOR JURY TRIAL

71. Mr. Tate demands trial by jury on all issues.

## V.    RELIEF REQUESTED

72. Wherefore Mr. Tate requests judgment be entered against Defendants and that the Court:

    a.  Award damages (compensatory, nominal, and punitive) against Defendant Evitt under 42 U.S.C § 1983 for violation of Mr. Tate's Fourth Amendment rights.

    a.  Award actual/compensatory damages and costs against Defendants under Mr. Tate's state law claims of malicious prosecution;

    b.  Award costs and attorney's fees pursuant to 42 U.S.C § 1983 and its attendant attorneys' fees/costs provisions;

    c.  Order such other and further relief, at law or in equity, to which Mr. Tate may be justly entitled.

Respectfully submitted, this Wednesday, January 21, 2026

[Signature Block on Following Page]

9

/s/ Garret S. DeReus

BIZER & DEREUS, LLC
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Eva M. Kalikoff (LA # 39932)
eva@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

10